THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MARY BATSON, Defendant-Appellant.

Fifth District   No. 5—85—0183

Opinion filed July 3, 1986.

Randy E. Blue and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

J. Lewis Wingate, State's Attorney, of Vienna (Kenneth R. Boyle, Stephen E. Norris, and Susan M. Young, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KARNS delivered the opinion of the court:

Defendant, Mary Batson, was charged with the offense of murder (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(2)), voluntary manslaughter (Ill. Rev. Stat. 1983, ch. 38, par. 9—2(a)(2)) and reckless homicide (Ill. Rev. Stat. 1983, ch. 38, par. 9—3(a)). The jury returned guilty verdicts on all three counts. The circuit court of Johnson County entered judgment only on the verdict of guilty of voluntary manslaughter and sentenced defendant to eight years of imprisonment.

At approximately 7:30 p.m. on October 16, 1983, defendant arrived at the Beehive Tavern. Victim and proprietress of the tavern, Brenda Denson, was present as well as several patrons. During the course of the evening, defendant and victim conversed and played pool. Douglas Strawhacker testified that defendant picked up a cigarette lighter belonging to victim and placed it in her purse. Strawhacker told defendant to put the lighter back and believed that she had done so. At approximately 11:30 p.m., Strawhacker walked defendant to her car, a 1975 yellow Cadillac, located in the tavern parking lot. Victim came out of the tavern and walked up to the driver's side of defendant's car. She asked defendant, who was seated in the driver's seat, whether defendant had taken the cigarette lighter. Defendant denied having the lighter and told victim that she could search her purse. The victim returned to the tavern, and Strawhacker walked toward his truck. A minute later, victim again approached defendant's car. While Strawhacker testified at trial that victim's head was leaning through the window on the driver's side of the car and her hands were on the door when defendant began to back up rapidly, his oral statement to police stated that he had been walking toward his vehicle when he heard the tires of the Cadillac spinning.

Strawhacker also testified that dust and gravel were thrown as defendant backed up her car. The testimony of the bartender on duty that evening corroborated Strawhacker's testimony that defendant backed up the car at a high rate of speed. Defendant then pulled forward, stopped and drove south on the blacktop road. The victim was found lying on the side of the road and died before being taken to the hospital. The cause of death was determined to be crush injuries to the chest with multiple fractures of each rib, extensive bleeding and lacerations of the lungs. Defendant was located several hours later by police walking on the side of a highway. Her car was found stuck in a ditch next to the highway. According to defendant's oral statement given to police on the morning of her arrest, the second time victim approached her car she again inquired about the cigarette lighter and defendant again denied having the lighter. Defendant stated that she then looked behind her and backed up her car in a normal manner. Defendant testified at trial that she was not angry at victim and did not intend to hurt or kill her. The cigarette lighter was subsequently found in defendant's car.

After the trial court entered judgment on the jury verdicts of guilty of all three charges, defendant filed an amended motion for a new trial alleging that the verdict of voluntary manslaughter impliedly acquitted defendant of murder and that the verdicts of voluntary manslaughter and reckless homicide were legally inconsistent. The trial court accepted defendant's argument of implied acquittal and vacated the judgment on the verdict of murder. The court also found that although the verdicts of voluntary manslaughter and reckless homicide were not legally inconsistent, the latter verdict should be vacated because the two offenses stemmed from the same physical act. Sufficient evidence of provocation was found, and the trial court entered judgment on the verdict of guilty of voluntary manslaughter.

While defendant raises several issues on appeal, we believe the dispositive issue to be whether the verdicts rendered by the jury are legally inconsistent, requiring reversal and a new trial. Subsequent to the trial court's consideration of this issue, the supreme court issued the opinion in *People v. Hoffer* (1985), 106 Ill. 2d 186, 478 N.E.2d 335. In *Hoffer*, defendant was found guilty by a jury of murder, voluntary manslaughter and involuntary manslaughter. (106 Ill. 2d 186, 189, 478 N.E.2d 335, 337.) The court entered judgment on each finding, and defendant moved to vacate the judgments for murder and voluntary manslaughter because the convictions were legally inconsistent. (106 Ill. 2d 186, 189, 478 N.E.2d 335, 337.) The court vacated the judgments of voluntary and involuntary manslaughter and entered judg-

ment solely on the murder conviction. (106 Ill. 2d 186, 189, 478 N.E.2d 335, 337.) The appellate court reversed all three convictions and remanded the cause for a new trial. *People v. Hoffer* (1984), 122 Ill. App. 3d 13, 460 N.E.2d 824.

In *Hoffer*, the court reasoned that, while voluntary manslaughter is an included offense of murder and involuntary manslaughter an included offense of both of the above, the mental states in each of these three offenses are mutually inconsistent. (*People v. Hoffer* (1985), 106 Ill. 2d 186, 194-95, 478 N.E.2d 335, 340.) "Where a determination is made that one exists, the others, to be legally consistent, must be found not to exist." (106 Ill. 2d 186, 195, 478 N.E.2d 335, 340.) The court held that because the verdicts rendered by the jury were legally and logically inconsistent, reversal and a new trial were required. 106 Ill. 2d 186, 195, 478 N.E.2d 335, 340.

Because the charges in *Hoffer* differ somewhat from the charges involved in the instant cause, it is necessary to delve into the analysis of *Hoffer* further. The most pronounced distinction is that the defendant in *Hoffer* was charged with violating subsection (b) of the voluntary-manslaughter statute (Ill. Rev. Stat. 1983, ch. 38, par. 9—2(b)) whereas defendant Batson is charged under subsection (a)(1) of that statute (Ill. Rev. Stat. 1983, ch. 38, par. 9—2(a)(1)). Additionally, *Hoffer* involved charges under subsection (a)(1) of the murder statute, (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(1)), as well as subsection (a)(2) involved in the instant cause (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(2)), and the *Hoffer* defendant was charged with involuntary manslaughter as opposed to reckless homicide (Ill. Rev. Stat. 1983, ch. 38, par. 9—3(a)). With regard to the offense of voluntary manslaughter, the *Hoffer* court noted that the inconsistency between the verdicts of guilty of voluntary manslaughter and murder was especially clear in that cause where the jury had received an instruction on murder which required the State to prove that the defendant did not believe that circumstances existed which justified the use of force. (106 Ill. 2d 186, 195, 478 N.E.2d 335, 340.) "By finding the defendant guilty of murder, therefore, the jury specifically found that defendant did not believe his conduct was justified. At the same time, by finding him guilty of voluntary manslaughter, the jury determined that he did believe, although unreasonably, that his conduct was justified." 106 Ill. 2d 186, 195, 478 N.E.2d 335, 340.

■ We do not read *Hoffer* as precluding a finding that the mental state of a defendant acting under a sudden and intense passion resulting from serious provocation (Ill. Rev. Stat. 1983, ch. 38, par. 9—2(a)(1)) is legally inconsistent with the mental state of a defendant

charged with murder (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(2)). The *Hoffer* court stated the following in addressing an allegation that verdicts of guilty of murder and voluntary manslaughter are legally consistent:

> "This view is based upon the issues instruction for murder prescribed in the second (1981) edition of IPI Criminal where self-defense is raised. [Citation.] Because this instruction does not include the 'lack of belief in justification' element, the instruction for voluntary manslaughter [citation] includes *all* of the elements of murder *plus* the additional elements of provocation or unreasonable belief in the necessity to act in self-defense. [Therefore], *amicus curiae* maintains that guilty verdicts on each offense are consistent, since the jury necessarily found all the elements of murder, accompanied by mitigating circumstances. \*\*\*
>
> \*\*\*
>
> As discussed above, the jury in the instant case received an issue instruction for murder which *did* include the 'lack of belief in justification' element. As such, the argument asserted is inapplicable to the facts of this case \*\*\*. We view with concern, however, the significant number of cases in which juries are finding defendants guilty of both murder and voluntary or involuntary manslaughter. [Citations.] We would suggest that this phenomenon results from failing to apprise the jury of the *distinct and mutually exclusive mental states necessary to support findings of guilty for the offenses of murder, voluntary manslaughter and involuntary manslaughter.*" (Emphasis added.) (*People v. Hoffer* (1985), 106 Ill. 2d 186, 199-200, 478 N.E.2d 335, 342-43.)

We conclude, from the above quoted language, that the *Hoffer* court intended that all verdicts of guilty of voluntary manslaughter, whether involving the element of provocation or unreasonable belief in the necessity to act, are inconsistent with guilty verdicts of murder and involuntary manslaughter. Additionally, a verdict of guilty of reckless homicide, which involves the same mental state as involuntary manslaughter, is clearly inconsistent with verdicts of guilty of murder and voluntary manslaughter. (*People v. Hoffer* (1985), 106 Ill. 2d 186, 195, 478 N.E.2d 335, 340; *cf. People v. Spears* (1986), 112 Ill. 2d 396; *People v. Hill* (1985), 133 Ill. App. 3d 644, 647, 479 N.E.2d 370, 372.) The fact that the trial court vacated the judgments entered on the verdicts of guilty of murder and reckless homicide and entered judgment solely on the conviction of voluntary manslaughter does not cure

the error of inconsistency. *People v. Almo* (1985), 108 Ill. 2d 54, 63-64, 483 N.E.2d 203, 207.

Before concluding that the legally inconsistent verdicts rendered require reversal and a new trial, we must address defendant's contention that she may not be retried for murder because of the trial court's finding that the jury, in finding defendant guilty of voluntary manslaughter, had impliedly acquitted her of the offense of murder. In *Hoffer*, the court rejected the application of the doctrine of implied acquittal where a jury has rendered legally inconsistent findings of guilt. (*People v. Hoffer* (1985), 106 Ill. 2d 186, 198, 478 N.E.2d 335, 341.) Similarly, the court determined that the statutory provision wherein conviction of a lesser offense operates as an acquittal of a greater offense (Ill. Rev. Stat. 1983, ch. 38, par. 3—4(a); *People ex rel. Daley v. Limperis* (1981), 86 Ill. 2d 459, 466, 427 N.E.2d 1212, 1215) only applies where a jury returns a guilty verdict on a lesser offense and is silent to the charged offense. (*People v. Hoffer* (1985), 106 Ill. 2d 186, 198, 478 N.E.2d 335, 341-42.) Here, the jury returned guilty verdicts on all three charged offenses. The *Hoffer* court concluded that because there was no implied acquittal, the protection against double jeopardy (U.S. Const., amend. V; Ill. Const. 1970, art. I, sec. 10) would not be infringed by remanding the cause for a new trial. (*People v. Hoffer* (1985), 106 Ill. 2d 186, 196-97, 478 N.E.2d 335, 341.) The court also rejected the defendant's argument based upon collateral estoppel. 106 Ill. 2d 186, 198-99, 478 N.E.2d 335, 342.

■ Defendant contends that *Hoffer* is distinguishable because the trial court in this cause found that the jury had impliedly acquitted defendant of murder whereas in *Hoffer* the trial court entered judgment on the inconsistent verdicts. Although vaguely stated, it appears that defendant bases her argument upon the protection against double jeopardy (U.S. Const., amend. V; Ill. Const. 1970, art. I, sec. 10) asserting that she cannot be retried for murder no matter how erroneous the trial court's finding of implied acquittal. Defendant cites *People ex rel. Daley v. Crilly* (1985), 108 Ill. 2d 301, 312, 483 N.E.2d 1236, 1241, for the principle that an acquittal is effective even when based upon an egregiously erroneous foundation. However, in discussing the concept of double jeopardy, the *Crilly* court stated that "a judgment of acquittal does not trigger double jeopardy protection unless it 'actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.'" (108 Ill. 2d 301, 311, 483 N.E.2d 1236, 1240-41, quoting *United States v. Martin Linen Supply Co.* (1977), 430 U.S. 564, 571, 51 L. Ed. 2d 642, 651, 97 S. Ct. 1349, 1355.) Unlike *Crilly*, where the acquittal was based upon a de-

termination by the trial court that there was insufficient evidence to establish as a matter of law some or all of the elements of the offense, here the trial court mistakenly believed, without the aid of *Hoffer*, that the doctrine of implied acquittal applied to the inconsistent guilty verdicts of murder and voluntary manslaughter. The trial court did not rule upon the sufficiency of the evidence with regard to the offense of murder and, therefore, we conclude that the court's actions do not bar defendant's retrial for that offense.

■■ We must now address defendant's contention that she was not proved guilty of any of the charged offenses beyond a reasonable doubt. (*People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366, 375.) In response to defendant's argument that she was not proved guilty of the offense of voluntary manslaughter beyond a reasonable doubt, the State asserts that defendant may not complain about a finding of guilty of voluntary manslaughter because the evidence supports a finding of guilty of murder. According to the State's position, defendant may be convicted of voluntary manslaughter as long as there is evidence to support a murder conviction even though the evidence fails to establish the mental state of voluntary manslaughter. The supreme court, quoting *People v. Thompson* (1973), 11 Ill. App. 3d 752, 756, 297 N.E.2d 592, 595, rejected this argument stating that " '[i]n a murder trial, a defendant may properly be found guilty of the lesser offense of voluntary manslaughter, but only [where] the evidence adduced at trial establishes the necessary elements of that offense.' " (*People v. Fausz* (1983), 95 Ill. 2d 535, 541, 449 N.E.2d 78, 80-81.) We do not agree with the State's contention that *Fausz* is distinguishable simply because the jury in *Fausz* found the defendant not guilty of murder whereas the jury here returned a verdict of guilty of murder. Regardless of the jury's finding with regard to the offense of murder, the State is still required to prove every element of the offense of voluntary manslaughter beyond a reasonable doubt.

■■ ■ A person commits the offense of voluntary manslaughter if she kills an individual without lawful justification under a sudden and intense passion resulting from serious provocation by the individual killed. (Ill. Rev. Stat. 1983, ch. 38, par. 9—2(a)(1).) The only categories of serious provocation which have been recognized are: substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse; but mere words or gestures have never been recognized as constituting sufficient provocation. (*People v. Fausz* (1983), 95 Ill. 2d 535, 539, 449 N.E.2d 78, 80; *People v. Crews* (1967), 38 Ill. 2d 331, 335, 231 N.E.2d 451, 453.) The record reveals no evidence of physical contact or aggression between defend-

ant and victim. At one point victim told defendant to stay out of a conversation victim was having with another patron. The only possible conduct on the part of the victim which could be construed as provocation is that she twice accused defendant of stealing her cigarette lighter. Even construing victim's conduct as a participant in a mutual quarrel, the question remains whether her conduct reached the level of serious provocation sufficient to excite an intense passion in a reasonable person. (*People v. Simpson* (1978), 74 Ill. 2d 497, 500, 384 N.E.2d 373, 374.) We conclude that the record is devoid of such evidence. Because it is the victim's conduct which should be focused upon, not the defendant's, in determining whether defendant was seriously provoked (*People v. Neal* (1983), 112 Ill. App. 3d 964, 967-68, 446 N.E.2d 270, 274), the mere fact that defendant backed up her car rapidly does not alter our conclusion that, as a matter of law, defendant was not proved guilty beyond a reasonable doubt of each element of the offense of voluntary manslaughter. *People v. Almo* (1985), 108 Ill. 2d 54, 67, 483 N.E.2d 203, 208-09.

■■ ■ Defendant also contends that she was not proved guilty beyond a reasonable doubt of the offense of murder. Section 9—1(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(2)) provides as follows:

> "A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:
> ***
> (2) He knows that such acts create a strong probability of death or great bodily harm ***."

It is the jury's function to resolve factual disputes, assess witness credibility, and determine the weight and sufficiency of the evidence, and the jury's verdict will not be reversed on appeal unless the evidence is so unsatisfactory or improbable that a reasonable doubt as to defendant's guilt remains. (*People v. Yates* (1983), 98 Ill. 2d 502, 456 N.E.2d 1369, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364.) Whether defendant's acts created a strong probability of death or great bodily harm is a question of fact to be decided by the jury. *People v. Palmer* (1979), 76 Ill. App. 3d 1014, 1026, 395 N.E.2d 713, 721.

■■ In order for the jury to find that defendant knew her acts created a strong probability of death or great bodily harm, it was necessary for the jury to believe that defendant was aware of the victim's presence at the side of defendant's car. Strawhacker, the primary eyewitness, testified that victim's head was leaning through the

window and her hands were on the door on the driver's side of the car. Upon being confronted with his previous oral statement to the effect that he was walking toward his truck when he heard tires spinning, Strawhacker explained that he had been walking toward his vehicle when defendant started her car but that he had turned and was walking toward defendant's car when she began backing up. According to defendant's oral statement, victim approached her car a second time to inquire about the cigarette lighter. At trial, defendant was never questioned about the victim's second appearance at the car and merely testified that she looked behind her and backed up in a normal manner. From this evidence, we believe that the jury could find that defendant was aware of victim's close proximity to her car. While defendant testified that she backed up her car at a normal speed, both Strawhacker and the bartender testified that defendant backed up rapidly, throwing dust and gravel.

In *People v. Steffens* (1985), 131 Ill. App. 3d 141, 475 N.E.2d 606, the defendant ran over the victim and dragged the victim underneath his car for almost a block. In reviewing the evidence to determine whether it was sufficient to sustain a murder conviction, the court noted that the defendant admitted seeing the victim in front of his car before he hit him. (131 Ill. App. 3d 141, 148, 475 N.E.2d 606, 613.) Although the defendant testified that he was 2 feet from the victim when he saw him and could not avoid hitting him, a witness testified that the defendant swerved the car toward the victim before hitting him. (131 Ill. App. 3d 141, 148, 475 N.E.2d 606, 613.) While defendant denied knowing the victim was underneath the car, the court determined that the jury could have reasonably believed that defendant knew he was dragging the victim. (131 Ill. App. 3d 141, 149, 475 N.E.2d 606, 613.) Intent may be inferred from the surrounding facts and circumstances, and the court concluded that it was not unreasonable for the jury to believe that the defendant knew his actions created a strong probability of death or great bodily harm. 131 Ill. App. 3d 141, 148-49, 475 N.E.2d 606, 613.

While the facts of *Steffens* are somewhat more severe than those present here, we believe the case is analogous to this cause. In both cases, sufficient evidence was presented of defendants' knowledge of the victims' presence near the automobiles and of defendants' knowledge that the victims were trapped underneath the cars. We conclude that the evidence is sufficient to support the jury's belief that the evidence is sufficient to support the jury's belief that defendant knew her act of backing up her car at a high rate of speed with victim close by created a strong probability of death or great bodily harm. Of

course, our reasoning does not imply that we have made a finding as to defendant's guilt that would be binding upon retrial.

■ ■ Lastly, defendant contends that she was not proved guilty of reckless homicide beyond a reasonable doubt. The distinction between the offense of murder, discussed above, and reckless homicide is the degree to which the defendant's acts created the likelihood or probability of death or great bodily harm. (*People v. Palmer* (1979), 76 Ill. App. 3d 1014, 1025-26, 395 N.E.2d 713, 721.) The elements of reckless homicide are that defendant unintentionally killed a person while driving a motor vehicle by recklessly performing acts which were likely to cause death or great bodily harm. (Ill. Rev. Stat. 1983, ch. 38, par. 9—3(a).) A defendant acts recklessly when she consciously disregards a substantial and unjustifiable risk so as to grossly deviate from the standard of care which a reasonable person would exercise. (*People v. Hawn* (1981), 99 Ill. App. 3d 334, 338, 425 N.E.2d 1024, 1027.) The mental state of recklessness may be inferred from the surrounding facts and circumstances and whether conduct is reckless is to be determined by the trier of fact. (*People v. Gittings* (1985), 136 Ill. App. 3d 655, 659, 483 N.E.2d 553, 558.) We believe that the evidence amply supports a finding that defendant consciously disregarded a substantial risk likely to cause death or great bodily harm. Defendant's conduct in backing up her car at a high rate of speed, combined with her knowledge that victim was in close proximity to the car, grossly deviates from the standard of care a reasonable person would exercise under similar circumstances.

For the foregoing reasons, the judgment on the verdict of guilty of voluntary manslaughter is reversed and, because of the legal inconsistency of the jury verdicts of guilty of murder and reckless homicide, the cause is remanded for a new trial.

Reversed and remanded.

KASSERMAN, P.J., and JONES, J., concur.